

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TERESA CORRAL-LERMA, | § | |
| Appellant, | § | No. 08-11-00134-CV |
| v. | § | Appeal from the |
| BORDER DEMOLITION & ENVIRONMENTAL INC., as a corporation, RAUL SOLIS, individually, and BONNIE SOLIS, individually, | § | 120th District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 2009-2631) |
| Appellees. | § | |

## **O P I N I O N**

For the second time this term, this Court has been called on to review the specifics of an alleged transaction that resulted in the demolition of an abandoned house in El Paso's Lower Valley. Appellant Teresa Corral-Lerma filed suit against Border Demolition & Environmental, Inc. ("Border Demolition") and Raul and Bonnie Solis ("the Solises")[1] after the defendants razed a residential structure on her land and purportedly absconded with personal property without her authorization. Border Demolition moved for hybrid summary judgment, contending *inter alia* that her husband Eduardo Lerma authorized the demolition on her behalf as her agent.[2] The trial

---

[1] For brevity's sake, we will refer to the Appellees collectively as "Border Demolition" unless circumstances require us to make a distinction among them.

[2] In a separate trial, Border Demolition obtained a jury verdict holding Eduardo Lerma personally liable for

court granted summary judgment in favor of Border Demolition on all claims and awarded more than $75,000 in attorneys' fees at a subsequent trial.

Appellant seeks reversal and reinstatement of her claims, arguing that numerous genuine issues of material fact precluded summary judgment. She also urges us to vacate the attorneys' fee award on waiver and sufficiency grounds. We affirm the trial court's summary judgment in part, reverse it in part, and remand for trial on Appellant's trespass claim. We also suggest a remittitur of attorney's fees.

## BACKGROUND

### *Factual History*

Corral-Lerma appeals the trial court's granting of Border Demolition's motion for summary judgment and as such, we review only the evidence properly contained within the summary judgment record at the time of rendition. In 2008, the City of El Paso condemned and threatened to demolish a residential structure located at 7429 Rose Lane Circle ("the Property"). Appellant purports to be the sole owner of the property, and two deeds in the record indicate that her husband, Eduardo Lerma, attempted to convey his undivided one-half interest in the Property—then indisputably held as community property—during the mid-to-late 1980s Appellant admitted that she never truly wanted the house on the Property to be demolished and stated that she was still pursuing an appeal of the City of El Paso's order at the time her husband solicited demolition bids. Her husband Eduardo, an attorney, acted as her attorney by representing her in the condemnation proceedings before the City.

Eventually, Eduardo Lerma contacted Border Demolition, owned by the Solises, and solicited a bid for demolition work for the Property. Border Demolition sent Lerma a proposed

---

demolition costs on oral contract and equitable grounds. We affirmed that judgment on appeal. *See Lerma v. Border Demolition & Envtl., Inc.,* No. 08-12-00105-CV, 2015 WL 737989 (Tex.App.--El Paso Feb. 20, 2015, no pet. h.)(not yet published).

contract, which he then forwarded to Appellant. Appellant testified in her deposition that her husband only collected the bid; they agreed she would close and decide final terms of the demolition contract for herself. She also denied ever authorizing Border Demolition to perform the demolition work as stated in the proposed contract. Instead, she stated she contacted Border Demolition to inform them of her objections to the contract and to set up a meeting to further discuss terms. The evidence is undisputed that neither Appellant nor her husband ever signed the proposed contract. However, Eduardo Lerma did make representations in a letter to the City of El Paso that he had personally hired Border Demolition to perform the demolition work during the condemnation appeal.

In July 2008, Border Demolition's sub-contractor, M&F Trucking, demolished the residential structure on the Property. Border Demolition did not possess a key to the property at the time of demolition and tore down the front gate to enter the property. Later, Border Demolition sued Eduardo Lerma for breach of contract. *See Lerma*, 2015 WL 737989, at *1 (affirming judgment on appeal). Appellant Teresa Corral-Lerma subsequently filed this separate suit against Border Demolition and the Solises.

### Procedural History

In her live petition, Appellant purported to bring eight separate causes of action against Border Demolition and the Solises: intrusion on seclusion, tortious interference, negligent misrepresentation, fraudulent misrepresentation, fraud,[3] private nuisance, conversion, negligent trespass, intentional trespass, and civil theft under the Texas Theft Liability Act, TEX.CIV.PRAC.

---

[3] Although Appellant pleaded fraudulent misrepresentation and fraud as separate causes of action, fraudulent misrepresentation is actually subsumed as an element of fraud. *See Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)("[P]roof that a party relied to its detriment on an alleged misrepresentation is an essential element of a fraud claim."); *Lexington Ins. Co. v. Chubb & Sons, Inc.*, No. 3:09-cv-00561-B, 2009 WL 1940485, at *4 (N.D.Tex. July 6, 2009)(not designated for publication)("Under Texas law, common-law fraud and misrepresentation are the same cause of action.").

& REM.CODE ANN. § 134.003(a)(West 2011). The defendants raised a counterclaim for attorney's fees under the Texas Theft Liability Act.

Border Demolition and the Solises moved for hybrid summary judgment, challenging multiple elements of each of the first seven causes of action on no-evidence grounds before arguing traditional grounds in the alternative. The defendants later supplemented their hybrid summary judgment motion to include the civil theft claim.

The trial court granted summary judgment in favor of Border Demolition and the Solises on all claims, but it did not specify upon which grounds its judgment rested. Appellant filed a notice of appeal. We abated the appeal pending entry of judgment after trial.[4]

At trial, the jury awarded Border Demolition and the Solises $78,001 in attorneys' fees. Appellant took appeal from that judgment as well. We consolidated these two actions into the single case at bar. Following extended mandamus proceedings[5] interrupted by an automatic bankruptcy stay, the Texas Supreme Court granted Appellant's mandamus relief and lifted its stay on this Court. We address the merits of this appeal below.

## DISCUSSION

In six issues, Appellant asserts that the trial court erred by granting summary judgment as to her claims for intentional and negligent trespass, fraudulent and negligent misrepresentation,

---

[4] Appellees filed a motion to dismiss the appeal pre-trial, contending that Appellant was attempting to seek improper interlocutory review of the summary judgment order by filing her notice of appeal because the issue of attorney's fees had subsequently been litigated at trial. In an order dated June 1, 2011, we agreed that Appellant's filing of the notice of appeal was premature and impermissibly interlocutory, given that the issue of attorney's fees had been set for trial at the time. Nevertheless, because trial had already concluded, and given that the trial court would not enter a final judgment on the verdict due to pendency of this appeal, we abated the appeal to allow for entry of final judgment so that we could treat the premature NOA as subsuming both trial and summary judgment issues.

[5] *See Corral-Lerma v. Border Demolition & Envtl., Inc.*, 420 S.W.3d 59 (Tex.App.--El Paso 2012, no pet.), *mand. granted*, *In re Corral-Lerma*, 451 S.W.3d 385, 388 (Tex. 2014)(orig. proceeding).

4

conversion, and civil theft because preclusive fact issues exist for each claim.[6]  She also raises a form objection to Border Demolition's no-evidence points in the trial court below.  Finally, Appellant challenges the trial court's award of attorney's fees, contending that Appellees waived their right to claim fees by failing to raise the issue at summary judgment, or, alternatively, that Appellees' failure to segregate recoverable fees from non-recoverable fees at trial was fatal.

Appellees counter that we should affirm summary judgment as to four causes of action because Appellant failed to properly assign error.  Appellees further maintain that summary judgment as to the remaining claim was proper under either traditional or no-evidence review.  The Solises separately argue that Appellant waived any objection to the judgment rendered in their favor because she only argued her case with respect to Border Demolition and never actually raised legal arguments directed at them in her brief.  Finally, Appellees collectively contend they did not waive their claim to attorney's fees and that the trial court committed no reversible error in awarding fees.

We begin by jointly addressing the procedural objections and summary judgment points before moving on to the attorney's fees analysis.

**I.**

### *Standard of Review:  Summary Judgment*

We review summary judgment grants *de novo*.  *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).  When a party moves for hybrid summary judgment, we generally address the no-evidence grounds first before turning, if necessary, to the traditional grounds.  *Id*.

"A no-evidence summary judgment motion under Rule 166a(i) is essentially a motion for a pretrial directed verdict; it requires the nonmoving party to present evidence raising a genuine

---

[6] Because Appellant did not challenge the propriety of summary judgment as to her claims for intrusion to seclusion, tortious interference, or private nuisance, we affirm the trial court's summary judgment order as to those four claims.

5

issue of material fact supporting each element contested in the motion." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). "When reviewing a no-evidence summary judgment, we review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id*. [Internal quotations marks omitted]. General or conclusory no-evidence challenges are prohibited; a movant must identify specific elements on which the non-movant failed to provide evidence. *Id*.

On traditional summary judgment review, we determine whether the movant has established that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). If so, the movant is entitled to summary judgment. *Id*.

### *A.*

### *Proper Parties*

As a threshold matter, the Solises contend that on appeal, Appellant never directly challenged the propriety of the judgment rendered in their favor. Instead, they maintain that Appellant only raised arguments challenging the judgment with respect to Border Demolition. As such, Appellant waived any claims against the Solises. We agree.

An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP.P. 38.1(i). Where a case contains multiple appellees and an appellant only raises legal argument as to certain appellees and not others, the Court may properly affirm judgment as to the omitted appellees because the appellant has presented nothing for our review. *See Deleon v. DSD Dev., Inc*., No. 01-03-00806-CV, 2006 WL 2506743, at *11 (Tex.App.--Houston [1st Dist.] Aug. 31, 2006, pet.

6

denied)(mem. op.).

Here, Appellant never made any legal arguments challenging the propriety of the judgment with respect to Bonnie or Raul Solis. Indeed, Bonnie Solis is only mentioned in passing in the statement of facts section of Appellant's brief, but never in the body of the brief. Her position in the controversy is never made clear, nor does Appellant put forth any argument as to her liability on appeal. As such, Appellant waived any claims against Bonnie Solis. As for the portions of Appellant's brief dealing with Raul Solis, he correctly notes that Appellant frames her legal argument entirely in terms of Border Demolition, mentioning Raul Solis only as a party at Border Demolition with whom she had contact. She never explicitly argues why the judgment as to Raul Solis was improper. Even under the liberal construction rules, we can see no substantive legal argument presented that would allow us to review the propriety of the judgment with respect to Raul Solis. Appellant's challenge to the summary judgment with respect to the Solises is waived, and we affirm summary judgment as to Raul and Bonnie Solis.

### B.

### *Assignment of Error*

As another preliminary matter, Border Demolition argues that injury is an element of three causes of action that it challenged in its motion before the trial court—namely, fraudulent misrepresentation, conversion, and civil theft. Because Appellant failed to make any appellate argument as to injury in addressing these causes of action, Border Demolition maintains that we should affirm summary judgment as to those claims.

An appellant's precision in crafting an argument that attacks all possible grounds for the trial court's judgment is critical to avoid appellate waiver. "When there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment

7

was rendered, the appealing party must negate all grounds on appeal." *Moore v. City of Wylie*, 319 S.W.3d 778, 781 (Tex.App.--El Paso 2010, no pet.). "If summary judgment could have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed." *Id*. at 782.

With respect to Issue Two on fraudulent misrepresentation, Appellees' arguments are misplaced. On page 27 of her brief, Appellant explicitly states "Mrs. Lerma incurred injury as a result because her real property was demolished." Error was properly assigned, and we review the merits of Issue Two below.

As for Issue Three, the claim for conversion, Appellant alleged in her brief that Border Demolition removed and exercised dominion over certain property from the home during the demolition process. In construing Appellant's brief under the liberal construction standards, we find that is enough to assign error to the issue of injury or damages and review the merits of Issue Three.

In Issue Four, dealing with civil theft, Appellant's no-evidence argument focuses on rebutting Border Demolition's effective consent point. Here, Appellant never explicitly addresses the injury issue raised in Border Demolition's motion. Because that element was specifically challenged in the motion for summary judgment, and because Appellant failed to address that element on appeal, we must affirm the summary judgment as to the civil theft claim.

Issue Four is overruled.

### *C.*

#### *Adequacy of No-Evidence Motion*

Appellant also raises a threshold procedural point, arguing that Border Demolition's no-evidence points on her claims for fraudulent misrepresentation and conversion must fail because

8

they do not specify which elements of those claims are under attack. Specifically, Appellant contends that by saying she showed "no evidence of various elements" on those claims, Border Demolition waived its ability to test those claims on no-evidence review.

Appellant misconstrues the language in Border Demolition's no-evidence points and reads it out of context. Appellant is correct that if Border Demolition had lodged only general no-evidence objections in its motion for summary judgment, the motion would be defective and summary judgment on those grounds would fail. *See* Tex.R.Civ.P. 166a(i). Appellant is also correct that Border Demolition made prefatory comments that Appellant failed to provide evidence on "various elements" in certain portions of its motion. However, Border Demolition set out all the elements to each of those claims in the no-evidence portion of its summary judgment, then specifically identified which individual elements it was challenging. That is sufficient to raise those points under Rule 166a(i). Border Demolition's no-evidence points were not waived.

### D.

### *Summary Judgment by Claim*

Having dealt with both parties' procedural objections, we next turn our attention to the surviving claims, addressing each one in turn under the no-evidence and, where necessary, the traditional standard.

### 1.

### Intentional and Negligent Trespass

In Issue One, Appellant contends the trial court's summary judgment on her intentional and negligent trespass claims was error. "To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property[;] (2)

9

the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary[;] and (3) the defendant's trespass caused injury to the plaintiff." *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex.App.--Fort Worth 2006, pet. denied).

### a. No-Evidence Review

Border Demolition raised two no-evidence points related to both intentional and negligent trespass in its appellate brief. First, Border Demolition contended that Appellant provided no evidence of compensable damages to the land in form of lost market value, loss of use, or otherwise because according to her own estimates, the value of the property went up once demolition occurred. Second, Border Demolition asserted that Appellant put forth no evidence to support a claim for mental anguish or similar damages. Appellant correctly notes that she never requested mental anguish damages in her live pleadings when summary judgment was rendered. Thus, we entertain only Border Demolition's no-evidence point on property damage.

Appellant maintains that she did not need to raise more than a scintilla of evidence on the issue of injury because injury and nominal damages are presumed in trespass cases. We agree. "[T]respass against a possessory interest . . . does not require actual injury to be actionable and may result in an award of nominal damages." *Hill v. Crowson*, No. 10-09-00006-CV, 2009 WL 3858065, at *3 (Tex.App.--Waco Nov. 18, 2009, no pet.)(mem. op.)(citing *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 12 n.36 (Tex. 2008)). "Even if a plaintiff fails to plead or prove that the defendant did any injury by entering plaintiff's property, the plaintiff is still entitled to nominal damages." *Gen. Mills Rest., Inc. v. Texas Wings, Inc.*, 12 S.W.3d 827, 833 (Tex.App.--Dallas 2000, no pet.).

Even if Appellant were required to raise more than a scintilla of evidence to be entitled to the nominal damages presumption, she more than met that burden by showing Border

10

Demolition tore down the front gates and demolished the house on the property. *See Braxton v. Chin Tuo Chen*, No. 06–10–00134–CV, 2011 WL 4031171, at *11 (Tex.App.--Texarkana Sept. 13, 2011, pet. denied)(mem. op.)(reversing summary judgment based on appellant's claim that neighbor had pushed dirt over property line, which created material fact issue on injury and nominal damages). Border Demolition's argument on this issue is without merit, and Appellant's trespass claim survives no-evidence review.

### b. *Traditional Summary Judgment Review*

We next turn to Border Demolition's traditional grounds and its consent defense. Border Demolition advances a two-pronged consent argument in defense of summary judgment on this claim. *See Gen. Mills Rests., Inc.,* 12 S.W.3d at 835 (consent is a defense to trespass).

First, Border Demolition contends that Teresa Corral-Lerma was not the sole owner of the Property. Although Eduardo Lerma purportedly conveyed his community interest to Appellant in the 1980s to grant her the Property as her separate property, Border Demolition maintains the conveyance was actually null and void. As such, the Property remained community property, and Eduardo Lerma, as co-owner, could consent to entry. In response, Appellant points to two deeds—a quitclaim deed from 1986 and a subsequent special warranty deed from 1989 in which Eduardo Lerma purports to convey his one-half undivided interest in the Property to Appellant. Border Demolition points to no contravening documentary evidence and cites no legal authority explaining why these deeds were defective. As such, based on the record before us, Border Demolition's contention that Eduardo Lerma retained a legal interest in the Property sufficient to grant him consent authority is only conjecture. At best, Eduardo Lerma's representation to third parties that he owned the Property raises a fact issue on ownership that would preclude summary judgment.

11

Second, Border Demolition argues that even if Eduardo Lerma had no separate authority to consent to any entries, Appellant granted him the actual authority to enter into a transaction with Border Demolition as her agent, or, at the very least, that she allowed Eduardo Lerma to cloak himself in her apparent authority and did nothing to correct Border Demolition's reasonable reliance on his representations. Appellant maintains she only gave her husband authority to solicit bids for the demolition, but she retained authority to ultimately decide who would demolish the structures and on what terms. She also points to her own deposition testimony, in which she claims to have called and spoken with Solis about her objections to the contract, as proof that Border Demolition should have known the scope of Eduardo Lerma's agency was limited.

"An agent is a person who is authorized by another to transact business or manage some affair by that person's authority and on account of it." *Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474, 483 (Tex.App.--Dallas 2007, pet. denied). The law does not presume agency; the existence of an agency relationship must be established by evidence. *Suarez v. Jordan*, 35 S.W.3d 268, 272 (Tex.App.--Houston [14th Dist.] 2000, no pet.). Agents may act on behalf of their principals under one of two types of authority: actual or apparent. *Id*. at 273. "Actual authority denotes that authority which the principal intentionally confers upon the agent, or intentionally allows the agent to believe he has, or by want of ordinary care allows the agent to believe himself to possess." *Id*. Subsumed within actual authority are the concepts of express and implied authority. "An agent has express authority when the principal makes it clear to the agent that it wants certain acts to be done." *Crooks*, 238 S.W.3d at 483. "Implied authority is the authority to do whatever is reasonably necessary and proper to carry out the agent's express powers." *Id*.

12

"Apparent authority arises through acts of participation, knowledge, or acquiescence by the principal that clothe the agent with the indicia of apparent authority." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998). "One seeking to charge a principal through the apparent authority of its agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent has the authority that it purports to exercise." *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996). "A court may consider only the conduct of the principal leading a third party to believe that the agent has authority in determining whether an agent has apparent authority." *Id*.

Appellant denies that she gave Eduardo Lerma actual authority to fully consummate a transaction in her name. Instead, she claims that she only gave him the authority to solicit bids for her review. Border Demolition argues that the summary judgment evidence established, as a matter of law, that it had a reasonable belief that Eduardo Lerma acted with apparent authority because he held himself out as the owner of the house. Regardless of how many times Eduardo Lerma told people he was the owner of the house, his representations alone do not bind Appellant to any consent he gave. "Only the conduct of the principal may be considered; representations made by the agent of his authority have no effect." *Suarez*, 35 S.W.3d at 273. To the extent Border Demolition maintains that Eduardo Lerma's representations are proof that Appellant acquiesced to his agency and that it was justified in believing Eduardo Lerma had apparent authority, the facts on this point are disputed. Appellant testified in deposition that she called Border Demolition's employees, informed them prior to demolition that she wanted to discuss the contract, and that Solis told her he would call her back to address her concerns. This creates a fact question as to whether Border Demolition reasonably believed Eduardo Lerma was the ultimate decision maker acting with his wife's authority.

13

In short, there are disputed issues of material fact concerning Eduardo Lerma's ability to consent to Border Demolition's entry onto the property, either in his own right or as his wife's agent. As such, Border Demolition cannot defeat Appellant's trespass claim as a matter of law, and summary judgment on this point was improper.

Issue One is sustained.

## 2.

### Fraudulent and Negligent Misrepresentation

In Issue Two, Appellant maintains that we should reverse summary judgment on her negligent misrepresentation and fraudulent misrepresentation claims. We disagree. The elements of a cause of action for negligent misrepresentation are:

1. defendant made a representation to the plaintiff in the course of defendant's business or in a transaction in which the defendant had an interest;

2. defendant supplied false information for the guidance of others;

3. defendant did not exercise reasonable care or competence in obtaining or communicating the information;

4. plaintiff justifiably relied on the representation;

5. defendant's negligent misrepresentation proximately caused the plaintiff's injury.

*Miller v. LandAmerica Lawyers Title of El Paso*, 362 S.W.3d 842, 845 (Tex.App.--El Paso 2012, no pet.).

Border Demolition challenged elements two, four, and five of Appellant's negligent misrepresentation claim in the no-evidence portion of its motion for summary judgment, but provided no responsive briefing at the appellate level on these points, instead relying solely on its unmeritorious assignment of error defense. We must nevertheless review the merits of the

14

summary judgment here. We agree that Appellant provided no evidence that Border Demolition provided her with false information intended for her guidance as set out in the challenge to element two, and uphold summary judgment on that ground. "The 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct." *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 439 (Tex.App.--Houston [14th Dist.] 2004, no pet.). "A promise to act or not to act in the future cannot form the basis of a negligent misrepresentation claim." *Id*. Here, the nucleus of Appellant's negligent misrepresentation claim is that Border Demolition promised not to act in the future, i.e., it would refrain from demolishing the house. That future promise falls squarely outside the scope of what is cognizable as a negligent misrepresentation claim. As such, the trial court properly rendered summary judgment on that claim.

We also find that summary judgment on Appellant's fraudulent misrepresentation claim was proper. The elements of fraud are as follows:

(1) that a material representation was made;

(2) the representation was false;

(3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;

(4) the speaker made the representation with the intent that the other party should act upon it;

(5) the party acted in reliance on the representation; and

(6) the party thereby suffered injury.

*Salazar v. Ramos*, 361 S.W.3d 739, 749 (Tex.App.--El Paso 2012, pet. denied).

Border Demolition challenged elements one, three, four, five, and six in the no-evidence portion of its summary judgment motion. We agree that there was no evidence Appellant acted

15

in reliance on that information to her detriment.  Indeed, Appellant disputes the very fact that she entered into a transaction with Border Demolition, maintaining that her position was always that she would not consent to demolition until they reached a final agreement.  However, "[w]ithout a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim." *Haase*, 62 S.W.3d at 798.  Appellant never directly explains, and we cannot independently see, how her "reliance" on Border Demolition's assurances that it would not demolish the home until a final agreement was reached fits within fraud's elemental framework.  Border Demolition may have acted without her direct permission, but there is no evidence that it induced her into consummating a transaction or otherwise acting in reliance on its purportedly fraudulent representations.  *See id*.  Absent proof of her reliance on Border Demolition's word, summary judgment on Appellant's fraud claim will stand.

Issue Two is overruled.

### 3.

### Conversion

In Issue Three, Appellant contends the trial court erred by granting summary judgment against her conversion claims.  Again, Border Demolition declined to file a responsive argument to Appellant's contentions in its brief, relying solely on the assignment of error point we overruled above.  We proceed without the benefit of Appellees' argument.

"To establish a claim for conversion, a plaintiff must prove that (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property." *Burns v. Rochon*, 190 S.W.3d

16

263, 268 (Tex.App.--Houston [1st Dist.] 2006, no pet.).

Texas does not recognize conversion claims for real property. *See Lucio v. John G. & Marie Stella Kenedy Mem'l Found.*, 298 S.W.3d 663, 672 (Tex.App.--Corpus Christi 2009, pet. denied). As such, Appellant's conversion claim necessarily fails if she accuses Border Demolition of taking realty and not personalty. Whether personal property attached to realty retains its character as personal property depends on whether the property is an improvement or a fixture. *Gorman v. Ngo H. Meng*, 335 S.W.3d 797, 804 (Tex.App.--Dallas 2011, no pet.). "An improvement includes all additions to the land other than trade fixtures that can be removed without injury to the property." *Id*. Improvements that are not fixtures retain their character as personal property. *Id.* By contrast, fixtures are pieces of personal property "that have become permanent parts of the realty to which they are affixed." *Id*. [Internal citation omitted]. Fixtures are considered realty. *Id*. "Whether personalty has been affixed to realty depends on (1) the mode and sufficiency of annexation; (2) the adaption of personalty to the use or purpose of realty; and (3) the intention of the owner." *Id*.

In Appellant's live pleading, she alleged Border Demolition converted the following objects: "Antique Bricks," "Red Rock," "Three Antique Clawed Tubs," "Three Antique Porcelain sinks," "Iron Gate and Rock Fence," "Two Garage Doors and motors," and "Property Fixtures." Obviously, some, if not all, of the items listed in the live pleading are clearly fixtures to realty not subject to conversion claims. To the extent any item of that list could constitute an improvement but not a fixture, Border Demolition challenged Appellant's pleadings in its no-evidence motion on the basis that Appellant never alleged it exercised dominion over *personal* property. Thus, the burden was on Appellant to provide more than a scintilla of evidence that the items she complained of were personalty and not realty. She failed to do so. As such, the trial

17

court's rendition of summary judgment on this ground was proper.

Issue Three is overruled.

## II.

Appellant's final two issues assail the propriety of the attorneys' fees award. In Issue Five, Appellant maintains Border Demolition waived its request for attorney's fees. In Issue Six, Appellant asserts that Border Demolition failed to segregate recoverable work hours spent defending against her Texas Theft Liability Act claim from non-recoverable hours spent defending other claims.

### *Waiver*

We first address waiver. Appellant argues that Border Demolition waived its counterclaim for attorney's fees by failing to include it in its motion for summary judgment, and that in order to "preserve" its claim, Border Demolition either needed to move for summary judgment on attorney's fees or else "motion" the court for a hearing. Border Demolition counters that it properly pleaded for attorney's fees and moved for partial summary judgment only on Appellant's claims, thereby validly leaving its own counterclaim for trial. We agree.

"[A] party's omission of one of his claims from a motion for summary judgment does not waive the claim because a party can always move for partial summary judgment[.]" *McNally v. Guevara*, 52 S.W.3d 195, 196 (Tex. 2001). Border Demolition did so here, electing to take its claim for attorney's fees to trial. Appellant cites *State Farm Fire & Cas. Co. v. Leasing Enters., Inc.*, 716 S.W.2d 553, 555 (Tex.App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.), in support of her contention that Border Demolition's failure to include its request for attorney's fees in its motion for summary judgment waived the claim in its entirety. To the extent *State Farm* could be read as applying to this case, we find *McNally* controls, as it is more recent, on-point, and

controlling mandatory authority from the Texas Supreme Court. Border Demolition's claim for attorney's fees was not waived. Issue Five is overruled.

*Attorney's Fees:  Segregation and Sufficiency*

We next turn to the propriety of the attorney's fee award. We construe Appellant's brief as complaining both of lack of segregation and that the award given was excessive because it included amounts that were not recoverable as a matter of law.

Attorney's fees are available to the prevailing party in a Texas Theft Liability Act suit. TEX.CIV.PRAC. & REM.CODE ANN. § 134.005(b)(West 2011). "Generally, a party seeking attorney's fees must segregate those fees incurred in connection with a claim that allows their recovery from fees incurred in connection with claims for which no such recovery is allowed." *Alief Indep. Sch. Dist. v. Perry*, 440 S.W.3d 228, 245 (Tex.App.--Houston [14th Dist.] 2013, pet. denied). "Texas courts recognize an exception to this general rule." *Id*. "When discrete legal services advance both recoverable and unrecoverable claims, attorneys are not required to segregate fees to recover the total amount covering all claims." *Id*. The mere fact that a set of claims is "dependent upon the same set of facts or circumstances" does not automatically mean there is no need for segregation. *Tony Gullo Motors*, 212 S.W.3d at 313 [Internal citations omitted]. Instead, "[i]n making this [segregation] determination, we do not look at the legal work as a whole, but parse the work into component tasks to determine which tasks relate to recoverable claims." *Five Star Int'l Holdings, Inc. v. Thomson, Inc.*, 324 S.W.3d 160, 171 (Tex.App.--El Paso 2010, pet. denied). "The need to segregate attorneys' fees is a question of law, while the extent to which claims can or cannot be segregated is a mixed question of law and fact." *Penhollow Custom Homes, L.L.C. v. Kim*, 320 S.W.3d 366, 374 (Tex.App.--El Paso 2010, no pet.).

19

If the fee movant survives the segregation inquiry, we then turn our attention to the legal and factual sufficiency of the evidence underpinning the award. *See Tony Gullo Motors*, 212 S.W.3d at 314. We sustain a legal sufficiency challenge when the trial court's decision is erroneous as a matter of law because (1) there is "a complete absence of evidence of a vital fact," (2) "the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact," (3) there is "no more than a mere scintilla" of evidence proving a vital fact, or (4) the evidence conclusively establishes the opposite proposition of a plaintiff's proffered vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We may set aside a damages verdict as legally insufficient "only if the evidence at trial would not enable reasonable and fair-minded people to reach the verdict under review." *Garza de Escabedo v. Haygood*, 283 S.W.3d 3, 6 (Tex.App.--Tyler 2009, pet. granted), *aff'd sub nom. Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex. 2011). "In a factual sufficiency challenge, the court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Samuels v. Nasir*, 445 S.W.3d 886, 891 (Tex.App.--El Paso 2014, no pet.)[Internal citations and quotation marks omitted].

The defense presented two expert witnesses. Appellant offered no expert witnesses of her own. Defense expert Carl Green testified that, based on his review of invoices, attorney James Martinez and the law firm of Ray, Valdez, McChristian, and Jeans ("Ray McChristian") jointly incurred $77,501.59 in attorney's fees through March 2011. Green opined that 20 percent of those fees advanced solely the non-theft claims, which he segregated out of his analysis. The remaining 80 percent of the attorney's fees—totaling $62,001.27—either pertained solely to the theft claim or else advanced defenses to both the theft claim and other claims, meaning that they

20

were recoverable. Green also testified that Martinez and the law firm incurred $20,000 in fees related to trial preparation and time actually spent in the trial that was not reflected in the invoices. When asked if the 80 percent rule applied to those fees as well, Green replied yes. On cross-examination, Green admitted that any legal charges incurred before Appellant pleaded her civil theft claim on February 2, 2010, were not recoverable, since they could not have advanced the defense against that claim. The jury returned an attorney's fee verdict of $78,001.[7][8]

At trial and on appeal, Appellant complains that it was improper for the jury to consider fees accrued before she filed her civil theft claim on February 2, 2010.

We agree with Appellant, and with Border Demolition's expert Carl Green, that fees accrued before Appellant filed her civil theft claim are not recoverable. However, we disagree that the attorneys failed to segregate recoverable and non-recoverable fees.

There is ample evidence to show that the jury was given the correct framework to use in measuring the adequacy of attorney's fees. Although the trial court admitted invoices dating back to before the recoverable claim were pleaded, the invoices contained detailed descriptions of the tasks each attorney performed so that the jury could assess their relevance. *Cf. Prudential Ins. Co. v. Durante*, 443 S.W.3d 499, 513 (Tex.App.--El Paso 2014, pet. filed)("Unsegregated fees are some evidence of what the segregated amount should be . . . .").

Further, *Tony Gullo Motors* recognized an illustrative class of discrete legal tasks such as "[r]equests for standard disclosures, proof of background facts, depositions of the primary actors, discovery motions and hearings, voir dire of the jury, and a host of other services [that] may be necessary whether a claim is filed alone or with others." *Tony Gullo Motors*, 212 S.W.3d at 313.

---

[7] We note this amount is close to the sum total of $62,001.27—i.e. 80 percent of the invoices through March 2011— and $16,000—i.e. 80 percent of $20,000 in trial preparation fees.

[8] Attorney James Martinez also testified that he believed that between 80 and 90 percent of the fees were recoverable.

21

The record reflects that once Appellant pleaded her civil theft claim on February 2, 2010, all subsequent invoiced entries either fell neatly within the class of discrete legal tasks that advanced both recoverable and non-recoverable claims, or else there was a fact question as to the propriety of those charges that was properly submitted to the jury. *See Penhollow Custom Homes, L.L.C.*, 320 S.W.3d at 374 (the extent to which claims may be segregated, as opposed to the need for segregation in the first place, is a mixed question of fact and law). "To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service." *Tony Gullo Motors*, 212 S.W.3d at 313.

Finally, Border Demolition provided two expert opinions—one from Carl Green, one from James Martinez himself—specifying percentages of fees the jury should segregate out in reaching its verdict. Numerous cases show that use of an expert citing a percentage amount of segregable fees is permissible. *See, e.g., Penhollow Custom Homes, L.L.C.*, 320 S.W.3d at 374. We believe that under the facts of this case, Border Demolition sufficiently established segregation. *See Alief Indep. Sch. Dist.*, 440 S.W.3d at 246-47 (attorney's testimony that he reduced the total amount of fees by 10 percent to account for non-recoverable fees was sufficient to establish segregation).

Instead, we find Appellant's point is more properly cast as a legal and factual sufficiency point. The issue here is whether the jury awarded more fees than were supported by the evidence, given that the relative percentages between segregable and non-segregable fees as assessed by the experts were legally incorrect. Green testified that in his professional opinion, 20 percent of the total invoice fees, or $15,500.32, should be segregated out. As stated above, the jury apparently relied on that number in reaching its verdict. However, Green also admitted on cross-examination that the jury should not consider any invoiced amounts prior to February 2,

2010 in its decision. In actuality, based on Border Demolition's own fee summary schedule, fees accrued prior to the filing of the civil theft claim in February 2010 amount to about 29 percent of total invoice fees—$22,534.40 to be precise. Thus, as a matter of law, the jury could only award a maximum of $54,967.19, or about 71 percent, which represented the invoiced amounts incurred after Appellant pleaded her civil theft claim. When the correct invoice percentage is combined with $20,000 in undisputed trial preparation and attendance fees Border Demolition incurred, the maximum legally and factually supportable attorney's fees the jury could have awarded would have been $74,967.19. The verdict rendered by the jury exceeds this amount by $3,033.81.

We possess the inherent power in a civil case to suggest a remittitur under TEX.R.APP.P. 46.3 where an "appellant complains there is insufficient evidence to support an award and the court of appeals agrees, but concludes there is sufficient evidence to support a lesser award." *Samuels*, 445 S.W.3d at 894 [Internal citation omitted]. Here, because the evidence is legally and factually sufficient to support an award, but not in the amount given, and because re-trial may not be the most expedient way to resolve this discrepancy, Border Demolition has a choice. If within 15 days of this opinion's issuance, Border Demolition and the Solises choose to accept a remittitur of $3,033.81—the difference between the jury verdict given and the maximum jury award supportable by legally and factually sufficient evidence—, we will reform the trial court's judgment and affirm as modified. If not, the judgment of the trial court will be reversed and this cause will be remanded for a new trial on attorney's fees.

## CONCLUSION

We affirm the trial court's summary judgment in its entirety with respect to Appellees Bonnie and Raul Solis. With respect to Border Demolition, we affirm the trial court's summary

23

judgment as to Issues Two, Three, and Four. Issue Five is overruled. We reverse the trial court's summary judgment as to Issue One and remand for further proceedings on Appellant's trespass claim.

We also reverse the trial court's judgment on attorney's fees because it rests on insufficient evidence (Issue Six). We suggest a remittitur of $3,033.81 to Border Demolition and the Solises. Appellees have 15 days from the date of this opinion's issuance to accept remittitur. If remittitur is accepted, the judgment of the trial court will be reformed to reflect an attorney's fees award of $74,967.19, and we will affirm the judgment as modified. If Appellees do not accept remittitur within that period of time, the judgment of the trial court will be reversed and this cause remanded for a new trial on attorney's fees.

                                   YVONNE T. RODRIGUEZ, Justice

May 13, 2015

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating